**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| Linda Gale Dunlap, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | |
| | ) | |
| Equifax Information Services, LLC,, | ) | **COMPLAINT** |
| | ) | **WITH JURY TRIAL DEMAND** |
| Defendants. | ) | |
| | ) | |
| | ) | |

## PRELIMINARY STATEMENT

This action for damages is based on Defendant's false reporting on Plaintiff's credit file and/or consumer reports, failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff, and failures to conduct reasonable reinvestigations with respect to such information.

## PARTIES

1. Plaintiff, Linda Gale Dunlap, is a natural person who resides in Clayton County, Georgia.

2. Plaintiff is an individual and is, therefore, a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

3. Defendant, Equifax Information Services, LLC (hereinafter "Equifax"), is a limited liability corporation formed under the laws of the State of Georgia. Equifax may be served with process via its registered agent, Shawn Baldwin, at 1550 Peachtree Street NE, Suite H46, Atlanta, Georgia 30309-2402.

4. Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Accordingly, Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

**JURISDICTION AND VENUE**

5. This Court has federal question jurisdiction over Plaintiff's Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, claims, pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over Defendant, pursuant to O.C.G.A. § 9-10-91(1), because, *inter alia*, Defendant frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

7. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims

occurred in this district. Pursuant to LR 3.1B(3), NDGa, venue is proper in the Atlanta Division because one or more Defendant maintains agents for service of process within the Atlanta Division.

**Factual Allegations Derived from Plaintiff's Mortgage**

8. On or about January 14, 2005, Plaintiff obtained a loan from OwnIt Mortgage Solutions, Inc. for the original principal amount of $109,600.00 (the "Mortgage").

9. The Mortgage is collateralized by residential real property located at 5343 Sapphire Circle, Ellenwood, Georgia 30294-3582, as evidenced by the Security Deed recorded at Deed Book 7998, Page 166, in the Superior Court of Clayton County.

10. On or about June 27, 2012, the Mortgage was transferred from OwnIt Mortgage Solutions, Inc. to HSBC Bank USA, National Association, as trustee for Ocwen, as evidenced by the Assignment recorded at Deed Book 10150, Page 61, in the Superior Court of Clayton County.

**Factual Allegations Derived from Plaintiff's Bankruptcy Case**

11. On July 31, 2012, Plaintiff filed a Chapter 13 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case Number 12-68827 (the "Bankruptcy Case").

12. In Schedule D of her Bankruptcy Petition, Plaintiff listed Ocwen as having a secured claim for the Mortgage in the amount of $106,080.00.

13. On November 13, 2012, Ocwen filed a Proof of Claim in Plaintiff's Bankruptcy Case, claim number 6, representing it was owed $111,199.45, inclusive of $5,542.61 in arrearages.

14. On January 30, 2013, Plaintiff filed her Chapter 13 Plan in accordance with 11 U.S.C. § 1322(b)(5), providing for the cure of any then-deficiency and the direct payment of all future Mortgage payments by Plaintiff to Ocwen.

15. On February 14, 2013, Plaintiff's Plan was confirmed and became *res judicata* as to Plaintiff and Ocwen.

16. Ocwen was served with a copy of the Confirmation Order on February 16, 2013, by the Bankruptcy Noticing Center.

17. On October 24, 2016, the Bankruptcy Court issued an Order of Discharge in favor of Plaintiff. The Bankruptcy Court order specifically excluded from discharge, however, any debt provided for under 11 U.S.C. § 1322(b)(5), such as Plaintiff's Mortgage. The applicable language of the Order is set forth below:

> **Most debts are discharged**
> Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 13 plan.
>
> In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.
>
> **Some debts are not discharged**
> Examples of debts that are not discharged are:
>
> - debts provided for under 11 U.S.C. § 1322(b)(5) and on which the last payment or other transfer is due after the date on which the final payment under the plan was due;

18. The Mortgage owed to Ocwen has not been discharged and is not subject to discharge under 11 U.S.C. § 1328(a)(1). See, *In re Duke*, 447 B.R. 365 (Bankr. M.D. Ga. 2011).

19. As recently as October 25, 2016, Ocwen advised the Bankruptcy Court and Plaintiff that Plaintiff's Mortgage was being serviced by Ocwen and that Plaintiff's obligation is ongoing.

20. Accordingly, Plaintiff has continued to make, and Ocwen has continued to service and accept, Plaintiff's Mortgage payments post-discharge.

**Factual Allegations Pertinent to the CDIA and Metro 2 Reporting Standards**

21. The reporting of consumer credit information by credit reporting agencies ("CRAs") and data furnishers is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment. Between two and three million consumer reports are issued by credit bureaus each day. See, *http://www.cdiaonline.org/about.cfm*.

22. The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

23. Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

24. To further assist CRAs and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to CRAs and data furnishers.

25. The CDIA's extensive training and support offerings include FCRA certification programs for both CRAs and data furnishers to assist each in maintaining compliance with FCRA regulations.

26. Because standardized methods are of paramount importance to the accurate, complete and timely reporting of consumer credit data, the CDIA can and will revoke FCRA certification for failure to adhere to the standards set by the CDIA.

27. In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than

nine billion transactions each year.

See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515*

28. The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA. Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards. *Id.*

29. The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

30. It is axiomatic that in the world of consumer credit information reporting, as long as a consumer credit account is open, every month some piece of information regarding that account/consumer is going to change. For example, interest continues to accrue, payments are made, etc.

31. 15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of information concerning the individual about whom a report relates. Further, 15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to regularly correct and update the

information they previously provided to consumer reporting agencies to make sure the information is complete and accurate.

32. Accordingly, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard for reporting consumer accounts that "will ensure the integrity and consistency of the credit information being reported." As part of that industry standard the Metro 2 Format Task Force has declared, "All accounts must be reported on a monthly basis." (Emphasis added.) *Id.*

33. Because consumer credit information changes monthly, failure to update that information on a monthly basis, yet still publishing reports containing the previously reported information without updates, means that the information being reported is almost certainly incomplete and inaccurate.

34. The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 standards.

35. The failure to adhere to CDIA guidelines and the Metro 2 reporting standards can adversely affect a consumer's FICO score.

36. At all times relevant hereto, Equifax has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

37. Defendant has actual knowledge that entities that perform credit risk scoring, and other functions utilizing the data reported by Defendant, assume Defendant's compliance with Metro 2 standards in reporting consumer information.

38. The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards increases the probability of a reported item being false or materially misleading to users of consumer reports, as those users assume that the information in the consumer reports is being reported in compliance with Metro 2 standards, and thus interpret that information accordingly.

39. As a result, failure to adhere accepted Metro 2 standards in reporting information in consumer reports adversely affects consumers, as it causes inconsistent, misleading, and/or incorrect interpretation of information regarding consumers.

40. The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards can itself support a finding of willful violation as

described by 15 U.S.C. § 1681n when that failure results in a report that is false, incomplete, and misleading.

41. Further, the failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a). See, *Gillespie v. Equifax Info. Servs., LLC*, No. 05C138, 2008 WL 4316950, at *8 (N.D. Ill. Sept. 15, 2008).

42. As an integral aspect of its duties under the FCRA, Equifax is required to have in place adequate and reasonable policies and procedures to assure the maximum possible accuracy of information concerning individuals about whom Equifax produces reports; the requirement to maintain reasonable procedures extends to Equifax's handling and reinvestigation of disputed information. At all times relevant hereto, Equifax adopted and implemented the CDIA guidelines and Metro 2 format as a means of fulfilling its aforementioned duties under the FCRA.

43. As an integral aspect of its duties under the FCRA, Ocwen is required to have in place adequate and reasonable policies and procedures for handling an investigation of disputed information. At all times relevant hereto, Ocwen adopted

and implemented the CDIA guidelines and Metro 2 format as a means of fulfilling its aforementioned duties under the FCRA.

44. Equifax, in conjunction with the other major credit reporting agencies, developed a browser-based software system that allows credit reporting agencies to electronically notify furnishers of disputed credit reporting and for furnishers to respond to such disputes following investigation. The system is commonly referred to as e-OSCAR and was designed to be Metro 2 compliant. See, *http://www.e-oscar.org/*

45. In order for information in consumer files and on consumer reports to be reported consistently and correctly, and with maximum possible accuracy, users of the e-Oscar system must comply with accepted Metro 2 standards. Otherwise, the information contained in the resulting consumer reports is not consistent or uniform and is subject to gross misinterpretation by users of consumer reports.

**Factual Allegations Derived from Reporting to and by Equifax**

46. On or about January 5, 2017, Plaintiff obtained a copy of her consumer report as published by Equifax.

47. That report contained erroneous information as provided by Ocwen and as published and reported by Equifax.

48. Specifically, the report shows the Mortgage as having a $0.00 balance and a last payment date of July 1, 2012.

49. The relevant portion of the Ocwen tradeline appeared in the January 5, 2017, Equifax report as follows:

| | | | |
|---|---|---|---|
| High Credit | | Owner | JOINT_CONTRACTUAL_LIABILITY |
| Credit Limit | | Account Type | MORTGAGE |
| Terms Frequency | UNKNOWN | Term Duration | 0 |
| Balance | $0.00 | Date Opened | Jan 14, 2005 |
| Amount Past Due | $0.00 | Date Reported | Jul 31, 2012 |
| Actual Payment Amount | | Date of Last Payment | Jul 01, 2012 |
| Date of Last Activity | | Scheduled Payment Amount | |
| Months Reviewed | 58 | Delinquency First Reported | Nov 01, 2011 |
| Activity Designator | | Creditor Classification | UNKNOWN |
| Deferred Payment Start Date | | Charge Off Amount | |
| Balloon Payment Date | | Balloon Payment Amount | |
| Loan Type | Conventional Real Estate Mortgage | Date Closed | |
| Date of First Delinquency | Nov 01, 2011 | | |

**Comments**

Bankruptcy chapter 13
Bankruptcy completed

**Contact**

OCWEN LOAN SERVICING, LLC
WEST PALM BEACH, FL????33409
800-746-2936

(Remaining portion of tradeline omitted.)

50. Because the balance of the Mortgage owing to Ocwen is not $0.00, and because Plaintiff's Mortgage owing to Ocwen was not discharged in bankruptcy, and because Plaintiff continues to make payments to Ocwen, the information described above was both false and misleading.

51. In a letter dated June 14, 2017, Plaintiff disputed the inaccurate and misleading information directly to Equifax and advised Equifax that the Mortgage was included in her Bankruptcy Case but was not discharged and is reporting incorrectly as to the current status, payment history, and balance. The relevant portion of Plaintiff's dispute is reproduced below:

June 14, 2017

Equifax Information Services LLC
P.O. Box 105314
Atlanta, Georgia 30348

| | | |
|---|---|---|
| In Re: | SSN: | 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 |
| | My Date of Birth: | March 8, 1958 |
| | Date of Bankruptcy Filing: | July 31, 2012 |
| | Case Number: | 12-68827 |

To Whom it May Concern:

On January 5, 2017, I reviewed my credit report as published by your company. I have identified an item which is being reported incorrectly and that is harming my credit rating. Please review the following incorrect item and make the appropriate corrections and then send me a copy of the complete copy of my updated credit file. This item is Ocwen Loan Servicing, LLC, Address: 1661 Worthington Rd., Suite 100, West Palm Beach, Florida 33409, Account Number: xxxxxx0732. This mortgage account is reporting incorrectly as to the current status, payment history and balance. The account was included in my Bankruptcy case described above. But the account was not discharged. The balance is not $0 and I continue to make payments per the terms of the account. It is a long-term debt, as the account indicates, and falls under § 1322(b)(5) of the bankruptcy code. I have included my confirmed plan listing this account in the mortgages section, a copy of my payoff statement, and a copy of the Bankruptcy Court Discharge Order, highlighted, so that so that you can verify its exception from Discharge. Please forward these documents to the furnisher, confirm my balance and payments and correct this report.

Thank you and I look forward to your immediate reply.

Sincerely,

52. In support of Plaintiff's dispute and to assist Defendants' respective investigations, Plaintiff included with her dispute the following documents: a copy of Plaintiff's Confirmed Chapter 13 Plan, showing the Mortgage as long-term debt and thus exempt from discharge under 11 U.S.C. § 1328(a)(1); a copy of the discharge order exempting debts such as that held by Ocwen from discharge; and a recent payoff statement showing the continuation of Plaintiff's obligation and current balance.

53. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Ocwen of Plaintiff's dispute within five business days of receiving the dispute, to forward the attached documents for Ocwen's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

54. Upon information and belief, Equifax failed to notify Ocwen and to provide the supporting documents, as required by 15 U.S.C. § 1681i.

55. In a document dated August 18, 2017, Equifax advised Plaintiff that it had researched the dispute, and provided a "revised report" that reflected its findings.

Equifax provided a copy of the tradeline as reported "post-investigation", which reproduced the errors identified by Plaintiff in her original dispute letter.

56. Specifically, the Ocwen tradeline appeared in the revised August 18, 2017, Equifax report as follows:

**Ocwen Loan Servicing, LLC** *Attn: Research Dept 12650 Ingenuity Dr Orlando FL 32826-2703 : (800) 746-2936*

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 709282* | 01/14/2005 | $0 | $0 | | | 58 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/31/2012 | $0 | $0 | 07/2012 | $0 | $0 | 11/2011 | | 11/2011 | $0 | | $0 | | |

Status - Included In Wage Earner Plan; Type of Loan - Conventional Re Mortgage; Whose Account - Joint Account; ADDITIONAL INFORMATION - Bankruptcy Chapter 13; Real Estate Mortgage; Bankruptcy Completed;

| Account History with Status Codes | 06/2012 | 05/2012 | 04/2012 | 03/2012 | 02/2012 | 01/2012 |
|---|---|---|---|---|---|---|
| | 4 | 3 | 2 | 1 | 1 | 1 |

57. The reinvestigation continuing to report erroneous information as published and reported by Equifax.

58. Specifically, the report continues to show the Mortgage as having a $0.00 balance and a last payment date of July 1, 2012.

59. The post-investigation reporting of Defendant is, independently and jointly, false and misleading.

60. The post-investigation reporting of Defendant is both false and materially misleading. , as users of consumer reports assume Defendant's compliance with Metro 2 standards in reporting consumer information.

61. There is no indication in the tradeline of the "verified" report that Plaintiff has disputed the information reported and published by Equifax. The failure to note the legitimate dispute by Plaintiff of the relevant tradeline renders the reporting materially misleading.

**Damages**

62. The reporting of Defendant breached its duties as described herein.

63. Defendant had actual notice that the information it is reporting regarding Plaintiff and the Mortgage is false, deceptive, and misleading.

64. Defendant failed to correct its false, deceptive, and misleading reporting as described herein.

65. Defendant continues to report the false, deceptive, and misleading information regarding Plaintiff and the Mortgage.

66. Accordingly, Defendant's conduct was willful.

67. Upon information and belief, Defendant has published the false and misleading information regarding Plaintiff to third parties.

68. As a result of Defendant's willful actions and omissions, Plaintiff is eligible for statutory damages.

69. Additionally, as a result of Defendant's actions and omissions, Plaintiff has suffered actual damages, including out-of-pocket expenses in challenging Defendant's wrongful representations regarding the Mortgage.

70. Realizing that Defendant has, in effect, deprived Plaintiff of positive credit reporting on the most important account Plaintiff has, and that Defendant continues to do so as a result of its failures to comply with the statutory requirements of 15 U.S.C. § 1681 et seq., Plaintiff has experienced severe worry, frustration and anxiety that interfere with her activities of daily living and adversely affect her interpersonal relationships.

71. As a result of the actions and omissions of Defendant, Plaintiff's actual damages also include the illegitimate suppression of her Fair Isaac Corporation ("FICO") credit score and other credit rating modeling scores.

72. Defendant's failures to correct and clear the inaccuracies in Plaintiff's Equifax report creates a material risk of financial harm to Plaintiff stemming from the decreased perception of Plaintiff's credit-worthiness.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §§ 1681e(b) and 1681i –Equifax Information Services, LLC**

73. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

74. Pursuant to 15 U.S.C. § 1681e(b), Equifax is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

75. Equifax's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

76. Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Equifax had an affirmative duty to independently investigate the dispute submitted by Plaintiff.

77. Pursuant to 15 U.S.C. § 1681i(a)(2), Equifax was required to communicate the specifics of Plaintiff's dispute to Ocwen, including the forwarding of any documents provided by Plaintiff in support of that dispute.

78. A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

79. In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Equifax was required to review and consider all relevant information submitted by Plaintiff.

80. Plaintiff's dispute was clear and unambiguous as to the inaccuracies of Equifax's reporting.

81. Plaintiff provided all the relevant information necessary for Equifax to reinvestigate and correct the inaccuracies in its reporting.

82. Equifax breached its duties as described herein.

83. If Equifax had conducted a reasonable reinvestigation of Plaintiff's dispute, Equifax would have reviewed and considered all of the information Plaintiff submitted in her dispute letter and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

84. If Equifax had conducted a reasonable reinvestigation of Plaintiff's dispute, the tradeline on Plaintiff's Equifax consumer report would have been appropriately corrected.

85. Due to Equifax's failures to follow reasonable procedures to assure maximum possible accuracy of information and failures to conduct a reasonable

reinvestigation of Plaintiff's dispute, the false and misleading information in Plaintiff's credit file and on Plaintiff's Equifax report was not appropriately modified.

86. Equifax had all the information necessary to correct its reporting. Yet, Equifax failed to correct the information in the face of clear evidence that its reporting was false and misleading. The failure indicates that Equifax's review procedures were not reasonable.

87. The fact that Equifax had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Equifax recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

88. Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Plaintiff in her consumer reports, in reckless disregard of the statutory requirements, Plaintiff's dispute, and the publicly recorded Bankruptcy Case filings.

89. Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable

reinvestigation of Plaintiff's dispute, and by failing thereafter to appropriately modify information in her file and on her consumer report in reckless disregard of the statutory requirements, Plaintiff's dispute, and the publicly recorded Bankruptcy Case filings.

90. As a result of Equifax's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Plaintiff has suffered actual damages as described herein. Plaintiff is, therefore, entitled to recover actual damages from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

91. Equifax's actions and omissions were willful, rendering Equifax liable to Plaintiff for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

92. Plaintiff is entitled to recover costs and attorneys' fees from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

## TRIAL BY JURY

Plaintiff is entitled to and hereby requests a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered in her favor and against Defendant for:

a.) Plaintiff's actual damages;

b.) Punitive and/or statutory damages, pursuant to 15 U.S.C. § 1681n;

c.) Reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and/or 1681o; and

d.) Such other and further relief as may be just and proper.

Respectfully submitted this 27th day of September, 2017.

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
Caitlin M. Berry
Georgia Bar No.: 761404
*cberry@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3334
Fax (404) 235-3333

*Plaintiff's Attorneys*